# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **ROY LASSITER, JENNIFER PURIFOY,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **CASE NO.: 2:07-CV-00583** |
| **v.** ) | |
| ) | |
| **PACIFICARE LIFE & HEALTH INSURANCE COMPANY, UNITED HEALTHCARE SERVICES, INC.,** ) | |
| as successor in interest to Pacificare Life & Health Company**; ROBERT D. BELL** ) | |
| and Fictitious Defendants "A" through "R" ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF SUPPLEMENTAL AUTHORITY
## IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

**COME NOW** the Plaintiffs, by and through their undersigned counsel of record, and provide

notice of supplemental case authority in support of their Motion to Remand. As grounds therefore,

the Plaintiffs show as follows:

This matter is before this Court on Plaintiffs' Motion to Remand, which was filed on July

17, 2007. Even though the jurisdictional issues raised therein have already been fully briefed by the

parties, the Plaintiffs file the instant Notice of Supplemental Authority to alert this Court to an

October 2, 2007, Order granting the plaintiffs' motions to remand in two factually similar cases

involving identical jurisdictional issues and the fraudulent marketing of a Medicare Advantage plan

sold by HealthSpring of Alabama, Inc., which is similar to the "Secure Horizons" plan sold by

Defendant Pacificare here. In *Nathaniel Bolden, et. al. v. HealthSpring of Alabama, Inc., et. al.,* Civ.

Action No. CV-07-0413-CG-B, and *Cloran Acoff, et. al. v. HealthSpring of Alabama, Inc., et. al.,*

Civ. Action No. CV-07-0414-CG-M, the Honorable Chief Judge Callie V.S. Granade of the United

States District Court for the Southern District of Alabama granted the plaintiffs' motions to remand, holding that because neither the Medicare Act, as amended by 42 U.S.C. §1395w-26(b)(3), nor the MMA's regulatory or grievance provisions provide an exclusive private federal remedy for the wrongful conduct alleged by the plaintiffs, the state law claims asserted by the plaintiffs are not completely preempted.  (See Order, attached hereto as Exhibit A).

Respectfully submitted,

/s/ J. Matthew Stephens
Robert G.  Methvin, Jr. (MET009)
J.  Matthew Stephens (STE153)
Rodney E.  Miller  (MIL126)

**OF COUNSEL:**

**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:     (205) 939- 0199
Facsimile:     (205) 939-0399

/s/ L. Cooper Rutland
L. Cooper Rutland, Jr. (RUT010)

**OF COUNSEL:**
**RUTLAND & BRASWELL, L.L.C.**
208 N. Prairie Street
P.O. Box 551
Union Springs, AL 36089

## CERTIFICATE OF SERVICE

2

I hereby certify that on 9th day of October, 2007, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Philip H. Butler
George B. Harris
William C. McGowin
**BRADLEY, ARANT, ROSE & WHITE, LLP**
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700

Paula Denney
John K. Edwards
JACKSON, WALKER, LLP
1401 McKinney, Suite 1900
Houston, TX 77010

/s/ J. Matthew Stephens
**COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2007, I placed a copy of the foregoing document in the U.S. mail to the following party:

Robert D. Bell
Route 1, Box 995
Shellman, GA 39886

/s/ J. Matthew Stephens
**COUNSEL**

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL BOLDEN, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. CV07-0413-CG-B |
| | * | |
| HEALTHSPRING OF ALABAMA, INC., et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| CLORAN ACOFF, et al. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. CV07-0414-CG-M |
| | * | |
| HEALTHSPRING OF ALABAMA, INC., et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |

## ORDER

The two above-styled cases were removed from the Circuit Court of Perry County,

Alabama, and are before the court on identical Motions to Remand raising identical jurisdictional

issues. (Doc. 9)[1] The principal issue presented is whether Part C of the Medicare Act, 42 U.S.C.

§ 1395w-21 thru 28, as amended by the Medicare Prescription Drug, Improvement, and

Modernization Act of 2003 ("MMA"), Pub.L. 108-173, "completely preempts" state law so as to

justify removal and the exercise of federal question jurisdiction over plaintiffs' complaints

containing only claims ostensibly made under state law.  Plaintiffs also assert that defendants'

---

[1]  To this point, the document numbers assigned in the dockets for both cases are
identical.

filing of discovery in the state court proceedings waived their right to remove this action. The court addresses these motions together and enters this order in both cases.

Preliminary Matters

As an initial matter, the court rejects plaintiffs' assertion that defendants waived their right to remove this action by filing discovery requests in the state court. It should be noted in plaintiffs favor that, in the two cases before this court, the defendants filed 21 deposition notices, each of which contained eighteen requests for production of documents covering every conceivably relevant recording or writing. Also, because the depositions of the plaintiffs were noticed for June 5-8 and 11, 2007,[2] and the Notice of Removal was filed in this court on June 7, 2007, the scheduling of the depositions was inconsistent with the subsequent removal of the action: plaintiffs' allegation that defendants intended to gain a tactical advantage in the state court by noticing plaintiffs' depositions prior to the dates previously noticed by plaintiffs for defendants' depositions appears to be a reasonable possibility. See Franklin v. City of Homewood, 2007 WL 1804411, *5 (N.D.Ala. 2007) (quoting Fain v. Biltmore Secs., Inc., 166 F.R.D. 39, 42 (M.D.Ala. 1996).

Nonetheless, the court agrees with the defendants that their discovery filings did not manifest an intent to litigate the merits of the action in the state court. In Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244, 1246 (11th Cir. 2004), the Eleventh Circuit described such waiver as requiring "some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal

---

[2] Depositions of the plaintiffs in Dial v. HealthSpring, CV07-412, assigned to Judge DuBose, were noticed for June 11-12, 2007.

2

with the federal court ... [w]aiver will not occur, however, when the defendant's participation in

the state action has not been substantial or was dictated by the rules of that court...." Id. (elision

in original; quoting Charles A. Wright, et al., 14B Federal Practice & Procedure § 3721 (2003)).

The Court in Yusefzadeh held that filing a Motion to Dismiss in lieu of an Answer was

insufficient to constitute waiver of the right to remove the action.  In the instant case, though

clearly not "dictated" by the state court and not apparently necessary to maintain the status quo,

the court can not describe the filing of deposition notices–even with extensive additional

discovery attached–as "substantial ... defensive action."  This appears merely to be the sort of

action that should be expected to occur, even if a defendant has not yet decided whether to

remove a case or even determined that it could be removed. But see Harris v. Edward Hyman

Co., 664 F.2d 943 (5th Cir. 1981)(holding, on congruent issue of waiver of right to object to

removal, that filing discovery requests and answering defendant's requests constituted waiver).[3]

Facts

    Until January 2006, plaintiffs[4] were covered under Medicare Parts A and B.  Plaintiffs

----

    [3] The Fifth Circuit decided this case in December 1981; it is thus not binding precedent pursuant to Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) which adopted decisions of Fifth Circuit entered prior to October 1, 1981.

    [4] Plaintiffs in CV07-413-CG-B are Nathaniel Bolden, Mary Bennett, Richard Bolden, Gracie Carter, Darleia Collins, Beatrice Harris, Charles Harris, Lucille Powell, Theo Powell, and Linda Watts.  Defendants include three individuals, Marcus Raine, Ellis Stapleton and Joseph Parker.
    Plaintiffs in CV07-414-CG-M are Cloran Acoff, Mary Dangerfield, Bertha Drew, James Fikes, Jessie Johnson, Willie Johnson, Teresa Jones, Daisy Norfleet, John Walker, Andrew Washington, and Booker Washington.  In addition to the same three individual defendants named in CV07-413, plaintiffs have additionally sued Marcus Trotter in this action.
    A third related case, Dial, et al. v. HealthSpring of Alabama, Inc, CV07-412-KD-C, was assigned to District Judge DuBose following removal.  An order denying plaintiffs' Motion to Remand has been entered in that case.  See 2007 WL 2317783 (S.D.Ala.).

3

allege that, at that time, the individual defendants, as agents of defendant HealthSpring, convinced them to join the "Seniors First" Medicare Advantage Plan offered by HealthSpring. The defendants told plaintiffs that they would receive free prescription drugs and healthcare and that the "Seniors First" plan was endorsed by Medicare. Defendants also represented that plaintiffs' regular physicians recommended the plan and that plaintiffs could continue to receive treatment from their regular physicians and at their regular hospitals. These representations were allegedly both material and false.

Plaintiffs filed suit in the Circuit Court of Perry County, Alabama, raising the following state law claims: breach of contract by failing to procure insurance conforming to the defendants' promises and to pay benefits as promised; fraud pursuant to Ala.Code §6-5-101; fraudulent suppression pursuant to Ala.Code §6-5-102; deceit and fraudulent deceit pursuant to Ala.Code §§ 6-5-103 and -104; negligent, reckless and/or wanton failure to procure insurance; negligence and wantonness; negligent hiring, training and supervision; conspiracy to defraud; unjust enrichment and constructive trust; breach of the implied duty of good faith and fair dealing; breach of fiduciary duties; and intentional, wanton, reckless and/or negligent infliction of emotional distress. The complaints contained a provision reciting that "[t]he Plaintiffs make no claims pursuant to any Federal Law, nor do the Plaintiffs make any claims which would give rise to Federal jurisdiction. Plaintiffs' claims arise solely from state law." Doc. 1, exhibit 1, ¶7 of Complaint.[5]

Defendants removed these cases to this court, asserting federal question jurisdiction and

---

[5] While this provision may be relevant to construing questionable allegations, it can not preclude consideration of the issue of preemption or complete preemption with regard to claims clearly and unambiguously made.

4

claiming that plaintiffs' state law claims 'arise under' the federal Medicare statute. 28 U.S.C.

§1331, 1341(b). Plaintiffs timely filed the instant motions to remand.

### Legal Standard

A defendant may remove a civil action filed in state court if the federal district court has

original jurisdiction to hear the matter. 28 U.S.C. § 1441(b). Once a case has been removed from

state court, however, the federal district court must remand the case "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction ." 28 U.S.C. § 1447(c).

The removing party bears the burden of establishing removal jurisdiction. See Pacheco de Perez

v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). "We construe removal jurisdiction

narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the

non-removing party, in this case the plaintiffs" Id. "A presumption in favor of remand is

necessary because if a federal court reaches the merits of a pending motion in a removed case

where subject matter jurisdiction may be lacking it deprives a state court of its right under the

Constitution to resolve controversies in its own courts." Univ. of S. Ala. v. Am. Tobacco Co.,

168 F.3d 405, 411 (11th Cir. 1999).

### Analysis

Title 28, Section 1441(b) of the United States Code provides in pertinent part that a civil

action may be removed from state court to the federal court where the action is "founded on a

claim or right arising under the Constitution, treaties or laws of the United States." Plaintiffs'

complaints raise only state law causes of action. "As an initial proposition, then, the 'law that

creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it

appears that some substantial, disputed question of federal law is a necessary element of one of

the well-pleaded state claims, or that one or the other claim is 'really' one of federal law."

Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983). "Federal

pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear

on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal

court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).

The possibility–or even the certainty–that defendant will raise federal preemption as a

defense is insufficient to establish that plaintiff's claims may be removed to federal court.

Franchise Tax Bd., 463 U.S. at 11-12; Caterpillar, Inc. v. Williams, 482 U.S. 386, 398 (1987).

In Franchise Tax Bd., the plaintiff had included reference to an anticipated federal defense–that

federal law was claimed to preempt state law on the plaintiff's claim–in its Complaint. The

parties agreed that the preemption issue was the only issue in the case. The Court, however, held

that the existence of a defense involving federal law did not give rise to federal question

jurisdiction and thus ruled that removal was improper. Franchise Tax Bd., 463 U.S. at 11-12.

> [S]ince 1887 it has been settled law that a case may not be removed to federal
> court on the basis of a federal defense, including the defense of preemption, even
> if the defense is anticipated in the plaintiff's complaint, and even if both parties
> admit that the defense is the only question truly at issue in the case.

Id. at 13-14.[6]

The Supreme Court noted that the well-pleaded complaint rule does not mean that a

plaintiff can avoid federal jurisdiction by artful pleading.

> Although we have often repeated that "the party who brings the suit is master to
> decide what law he will rely upon," The Fair v. Kohler Die & Specialty Co., 228
> U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), it is an independent corollary

---

[6]  The Court also rejected a contention that a federal-law counter-claim could form a
basis for federal question jurisdiction. Id., at 11-12.

6

of the well-pleaded complaint rule that a plaintiff may not defeat removal by
omitting to plead necessary federal questions in a complaint, see Avco Corp. v.
Aero Lodge No. 735, Int'l Assn. of Machinists, 376 F.2d 337, 339-340 (CA6
1967), aff'd, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

Franchise Tax Bd., 463 U.S. at 22.  The Court limited its discussion of this issue to state claims

which "are, in substance, federal claims," id. at 22-25 (citing cases on §301 of the LMRA,

"ejectment suit[s] based on Indian title," and ERISA), that is, "a federal cause of action [which]

completely preempts a state cause of action." Id. at 24; see Metropolitan Life Ins. Co. v. Taylor,

481 U.S. 58, 60, 63-64 (1987)(preemption can give rise to federal question jurisdiction where

area so clearly preempted that claim is necessarily federal in character, and falls within statutory

civil remedy framework.)  In addition to such inferences of congressional intent, Congress can

also expressly provide for removal of state claims relating to the subject matter covered by a

federal statute.  See National Bank Act, 12 U.S.C. § 85 et seq.;  Beneficial National Bank v.

Anderson, 539 U.S. 1 (2003).

Professor Moore explains the three types of implied preemption as follows:

In the case of "field" preemption, state law is preempted because it provides
remedies for the harm sought to be regulated by federal law.[7]  In the case of
"conflict" preemption, the state cause of action is superceded because it directly
clashes with–and therefore undermines–federal law.  For example, a state tort suit
against one protected by federal immunity is preempted because it "negatively"
undermines the goal of the federal immunity.[8]  In the case of "complete"
preemption, which has been found to exist on rare occasions, federal legislative

---

[7] [original footnote 12.2] "**Field preemption**.  See Public Util. Dist. No. 1, v. IDACORP,
Inc., 379 F.3d 641, 647 (9th Cir. 2004)(field preemption occurs when the federal statutory
scheme is sufficiently comprehensive to infer that Congress left no room for supplementary
regulation by the states)."

[8] [original footnote 13] "**Conflict preemption**. Cf. Howard v. Lyons, 360 U.S. 593, 597,
79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959)(state libel suit against federal officer is controlled by
federal law)."

regulation is so pervasive that it effectively transforms state causes of action into claims under the federal statute.[9]

15 Moore's Federal Practice §103.45[2].

There is a clear distinction between ordinary preemption and the "complete" preemption, also sometimes known in the ERISA context as "super preemption,"[10] which gives rise to federal question jurisdiction over state law claims. See Geddes v. American Airlines, Inc., 321 F.3d 1349, 1352-53 (11th Cir. 2003). "The Supreme Court has cautioned that complete preemption can be found only in statutes with 'extraordinary' preemptive force. ... Moreover, that 'extraordinary' preemptive force must be manifest in the clearly expressed intent of Congress." Id.

> The lower federal courts have had difficulty understanding and applying the Supreme Court's distinction between complete preemption and other preemption defenses that do not provide for federal jurisdiction under the well-pleaded complaint rule. Beyond cases involving ERISA, the LMRA, the National Bank Act and certain tribal claims, substantial uncertainty exists about the applicability of the complete preemption corollary. The Court in Avco [Corp. v. Aero Lodge, I.A.M. & A.W., 390 U.S. 557 (1968)] has given great weight to the presence of clear congressional intent to preempt state actions, clearly manifested in both language and legislative history, ... . The Court further emphasized in Metropolitan Life that the drafters of ERISA had purposely mirrored the language of the Labor Management Relations Act, and that in both statutes, Congress had also manifested its intent by creating federal private causes of action to enforce the statute.

15 Moore's Federal Practice §103.45[3][a].[11]

---

[9] [original footnote 13.1] **"Complete preemption**. See Sullivan v. American Airlines, Inc., 424 F.3d 267, 272 (2d Cir. 2005)(noting that Supreme Court has rarely found statutes to have the "requisite extraordinary preemptive force" to support complete preemption)."

[10] See e.g. Ervast v. Flexible Products Co., 346 F.3d 1007 (11th Cir. 2003).

[11] Some courts have referred to tests for complete preemption purportedly articulated in Heckler v. Ringer, 466 U.S. 602, 614-15 (1984). E.g. Kennedy v. Health Options, Inc., 329 F.Supp.2d 1314, 1316 (S.D.Fla. 2004). In Ringer, the Supreme Court provided for federal

Circuit and Supreme Court precedent counsels caution in finding that a federal statute completely preempts state law claims.

> We have noted that "the [Supreme] Court has revisited the complete preemption doctrine only sparingly" and has found complete preemption only in the context of two federal statutes-the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, et seq., and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. Furthermore, "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA."

Smith v. GTE Corp., 236 F.3d 1292, 1311 (11th Cir. 2001) (quoting Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 855-56 (11th Cir. 1999)).

The Eleventh Circuit has previously considered application of the complete preemption doctrine to federal statutes other than ERISA and the LMRA in several cases. See Geddes v. American Airlines, Inc., supra (finding no complete preemption by Railway Labor Act); Blab T.V., supra, (Cable Communications Policy Act did not completely preempt state law so as to allow removal pursuant to federal question jurisdiction); Smith v. GTE Corp., supra, (district court lacked federal question jurisdiction over a class action filed against a telephone service

---

jurisdiction where plaintiff filed federal claims in federal court seeking injunctive relief and a declaratory judgment that the expenses for a particular surgical procedure were reimbursable under Medicare. The Court held that these claims were 'inextricably intertwined' with a claim for Medicare benefits and were thus subject to the exhaustion requirement of 42 U.S.C. §405(g). Id. Accordingly, Ringer does not address the question whether the federal statute so completely preempts a plaintiff's state law claims as to justify the exercise of federal question jurisdiction. After Ringer, the Supreme Court held in Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) that "a state claim may be removed to federal court in only two circumstances-when Congress expressly so provides ..., or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Id. at 8 (emphasis added).

Additionally, as discussed below, the third sentence of 42 U.S.C. §405(h), cited by the Ringer court, applies only to suits against the United States and certain federal agencies or officials, and not to suits against private entities such as MA plans or their agents. The court need not determine what effect this would have on Ringer's analysis in the instant case.

provider in federal court alleging fraud under state law in connection with equipment leases and

seeking injunctive relief; parties may litigate any preemptive effect of FCC's orders or

Communications Act in state court); Anderson v. H&R Block, Inc., 287 F.3d 1038 (11th Cir.

2002), rev'd sub nom., Beneficial National Bank v. Anderson, 539 U.S. 1 (2003) (Supreme

Court reversed the Court of Appeals and held that the National Bank Act provided the exclusive

remedy for usury against national banks and thus completely preempted the state law usury

claims.).

The analysis used by the Eleventh Circuit is drawn from that used by other Circuits and

focuses on the intent of Congress.

> The Fourth Circuit examines whether: (1) the rights underlying the state cause of
> action are equivalent to the exclusive rights granted under a federal statute, and
> (2) the statutory language and legislative history evinces Congress's intent that
> litigation to protect the federal rights occur in federal courts. ... The Tenth
> Circuit has adopted a similar test, examining whether: (1) Congress has provided
> a federal cause of action to enforce the federal law, thus revealing an intent to
> allow removal in such cases, and (2) the state claim is displaced by federal law
> under an ordinary preemption analysis. ... The Fifth Circuit has applied a
> three-part test, requiring: (1) the existence of a federal cause of action within the
> federal statute, (2) a provision conferring jurisdiction to the federal courts for the
> cause of action that "closely parallels" the jurisdictional provisions of the LMRA
> and ERISA, and (3) evidence of "the kind of congressional intent found to exist
> with respect to ERISA." ...
>   These cases reveal a varying emphasis on such questions as whether the state
> claim is displaced by federal law under an ordinary preemption analysis, whether
> the federal statute provides a cause of action, what kind of jurisdictional
> language exists in the federal statute, and what kind of language is present in the
> legislative history to evince Congress's intentions.  Despite the variations,
> however, "all [the tests] focus on a similar goal: to determine whether Congress
> not only intended a given federal statute to provide a federal defense to a state
> cause of action that could be asserted either in a state or federal court, but also
> intended to grant a defendant the ability to remove the adjudication of the cause
> of action to a federal court by transforming the state cause of action into a federal
> [one]." ... The complete preemption analysis thus focuses primarily upon
> evaluating Congress's intent, which is the "touchstone" of federal court removal
> jurisdiction.

10

Blab T.V., 182 F3d at 856-57 (Citations omitted)(citing Rosciszewski v. Arete Assocs.. Inc., 1

F.3d 225, 229-33 (4th Cir.1993); Schmeling v. NORDAM, 97 F.3d 1336, 1339-41 (10th

Cir.1996); and Aaron v. National Union Fire Ins. Co. of Pittsburg, 876 F.2d 1157, 1164-65 (5th

Cir.1989)).

     In Blab T.V., the Eleventh Circuit began by reviewing the language of the federal statute

and its legislative history and found that they contained

> no statements that expressly announce an intent that state-law actions related to
> section 612 are to be considered as arising under federal law for purposes of
> removal jurisdiction. Instead, section 612(a) contains jurisdictional language that
> is similar to section 301 of the LMRA, which according to Metropolitan Life,
> supports complete preemption.
>   Even so, Congress omitted any indication in the Cable Act's legislative history
> that section 612(a)'s jurisdictional language is intended to function in the same
> manner as section 301 of the LMRA, a circumstance that was of significant
> importance to the Metropolitan Life Court. See 481 U.S. at 65, 107 S.Ct. at 1547.
> We view the absence of such a statement in the legislative history to be a
> persuasive argument against finding complete preemption in this case, but we
> agree with other circuit courts that this omission is not dispositive. Instead, we
> will examine the surrounding provisions in the Cable Act and its legislative
> history to seek out other clues of Congress's intent.

Blab T.V., 182 F3d at 857.

     The Court next noted that the Act contained reference to continued application of state

law in state court. "These provisions contemplate the application of state-law and the exercise of

state-court jurisdiction to some degree with respect to the regulation of cable services. In our

view, the inclusion of these provisions counsels against a conclusion that the purpose behind the

Cable Act was to replicate the 'unique preemptive force' of the LMRA and ERISA." Id. at 857-

58. The Court proceeded to discount particular statutory provisions cited by defendant and then

held that the provisions of the Act at issue "fail to demonstrate the requisite congressional intent

to convert [plaintiff's] state law claims into claims arising under federal law and to permit

removal jurisdiction under § 1441(a). In reaching this conclusion, we have avoided adopting a

specific test to be applied to all future claims of complete preemption in this circuit." Id. at 858.

The analysis the Court made of the Railway Labor Act in Geddes is very similar to its

analysis in Blab T.V.; it also proves dispositive of the issue before the court in the instant case.

The Court of Appeals looked at the purpose stated by Congress, the comprehensive framework

of "adjustment boards with exclusive and mandatory jurisdiction to handle minor disputes, ...

thus keeping them out of courts altogether" and the limited nature of federal review.  Geddes,

321 F.3d at 1354.   It considered the Act's relevant provisions and legislative history, comparing

them to those found to support federal jurisdiction in the LMRA and ERISA.  Id.  The Court

found

> nothing in the legislative history [of the RLA] to suggest that Congress intended
> to allow parties to litigate RLA minor dispute claims in federal court. ... Nor do
> we find any indication that Congress intended for federal courts to acquire
> jurisdiction solely to ensure that minor disputes are redirected from the courts to
> the boards of adjustment.
>         In stark contrast, both the LMRA and ERISA have express language
> creating a federal cause of action for the resolution of disputes. See 29 U.S.C. §
> 185(a) (1998) ("Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce ... may be
> brought in any district court of the United States having jurisdiction of the
> parties"); 29 U.S.C. § 1132(f) (1999) ("The district courts of the United States
> shall have jurisdiction, without respect to the amount in controversy or the
> citizenship of the parties, to grant the relief provided for in subsection (a) of this
> section in any action.").

Id.; see Smith v. GTE Corp., 236 F.3d 1292, 1310-13 (11th Cir. 2001)(similar analysis of Federal

Communications Act, also addressing scope of preemption in administrative rulings by FCC).

The Social Security Act contains a general bar on federal question jurisdiction.  42

U.S.C. §405(h).  That section is integrated in the Medicare subchapter by 42 U.S.C. §1395ii,

which translates any reference to the Commissioner of Social Security or the Social Security

Administration into a reference to the Secretary or Department of Health and Human Services,

respectively.  Federal question jurisdiction is generally unavailable for "any claim arising under"

the Medicare Act-i.e., any claim that has its "standing and ... substantive basis" in that Act.

Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 11 (2000).  This jurisdictional

prohibition would quickly lay to rest any assertion that Part C of the Medicare statute provides

for removal to federal court of this case, or for exercise of federal question jurisdiction over

these unexhausted state law claims.  However, §405(h), by its terms, only applies to suits

brought against certain government officials or entities.[12]  In the Medicare Advantage setting,

suit is most likely to be brought, as in this case, against private entities.  The third sentence of

Section 405(h) thus does not apply in the instant case.[13]

   The Medicare statute consists of four "Parts." Parts A and B contain the "traditional

Medicare" provisions; they provide medical coverage for the elderly and others. Part C is the

Medicare Advantage managed care program, codified at 42 U.S.C. §§ 1395w-21 through

1395w-29.   Part D, codified at 42 U.S.C. §§ 1395w-101 through 1395w-152, is a voluntary

prescription drug benefit program.

---

[12] "The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. §405(h) (emphasis added)

[13] The remainder of this section also may not apply as the plaintiffs' claims have not been the subject of an administrative determination, and arguably would not be subject to such a determination under the grievance procedure of the Act.  It is not clear what, if any, provision of Part C makes the grievance procedures mandatory, as argued by defendant.

In 1997, Congress originally passed Part C, allowing private companies to establish and market "Medicare + Choice" plans to persons covered by traditional Medicare, allowing the participants to opt out of the traditional fee-for-service coverage under Parts A and B. 42 U.S.C. §1395w-21 et seq. Those plans were the precursor to the Medicare Advantage plans established by the 2003 amendments. See Medicare Prescription Drug and Modernization Act of 2003, (MMA), Pub.L. 108-173. Medicare Advantage plans are privately-run managed care plans that provide coverage for both inpatient and outpatient services. Id.

The stated purpose of Medicare+Choice, the precursor to the current version of Part C, was to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare ... [and to] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H. Conf. Rep. No. 105-217, at 585 (1997). This statement of congressional purpose is devoid of any indication that state law actions should be removable to federal court. Similarly, the statute itself is silent on this issue.

Scope of Preemption

The prior version of the statute establishing the Medicare + Choice program contained the following preemption provision:

(3) **Relation to State laws**
 (A) **In general**
The Standards established under this subsection shall supersede any State law or regulation (including standards described in subparagraph (B)) with respect to Medicare + Choice plans which are offered by Medicare + Choice organizations under this part to the extent such law or regulation is inconsistent with such standards.
 (B) **Standards specifically superseded**
State standards relating to the following are superseded under this paragraph:
     (I) Benefit requirements (including cost-sharing requirements).

14

          (ii) Requirements relating to inclusion or treatment of providers.
          (iii) Coverage determinations (including related appeals and grievance
processes).
          (iv) requirements relating to marketing materials and summaries and
schedules of benefits regarding a Medicare + Choice plan.

42 U.S.C. §1395w-26(b)(3)(2002).

    As part of the 2003 amendments to Part C, Congress amended the preemption provision

as follows:

    (3) **Relation to State laws**
    The standards established under this part shall supersede any State law or
    regulation (other than State licensing laws or State laws relating to plan solvency)
    with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. §1395w-26(b)(3)(Supp. 2007).   The legislative history of this provision indicated that

the amendment strengthened the preemptive effect of the statute and stated that "the MA

program is a federal program operated under Federal rules.  State laws, do not, and should not

apply, with the exception of state licensing laws or state laws related to plan solvency.  There has

been some confusion in recent court cases." H. Conf. Rep. 108-391 at 557.

    The Centers for Medicare and Medicaid Services ("CMS") of the Department of Health

and Human Services described the effect of the amendment of the Part C preemption provision

by the MMA in connection with the promulgation of proposed final rules.

    Apart from those specific preemptions [in the prior version of §1395w-
26(b)(3)(B)], general preemption already applied where State provisions were
inconsistent with Federal standards such that other State standards in conflict with
Federal standards were also already preempted.
Areas of State law that will newly be preempted by full preemption of State laws
(other than licensing and solvency) do exist, however....
    In reality, determinations of which State laws have been subject to general
preemption often has not been made unless specific questions or disputes have
arisen that resulted in a court review of applicability of law to specific cases. The
MMA revision relieves uncertainty of which State laws are preempted by
"preempting the field" of State laws other than State laws on licensing and

<u>solvency</u>.

Establishment of the Medicare Advantage Program, 69 FR 46866 (proposed August 3, 2004) (emphasis added).

In light of the facially broad language used in §1395w-26(b)(3), the legislative history of the MMA indicating that the amendment of §1395w-26(b)(3) was to expand preemption by the statute, and the construction of that provision made by the agency responsible for enforcing the statute,[14] it is at least arguable[15]–and the court will presume for purposes of this analysis–that the "ordinary" preemptive effect of the Medicare Part C statute is sufficiently broad to satisfy that element of the analysis for complete preemption. See <u>Blab TV</u>, at 856-57 (one element of usual "complete preemption" analysis is "whether the state claim is displaced by federal law under an ordinary preemption analysis").

<u>Federal Civil Remedy</u>

The breadth of preemption is only one factor, however, that the court looks at in analyzing whether it has jurisdiction state law claims. Defendant argues that the grievance

---

[14]  The parties have cited the court to the pronouncements of the Department of Health and Human Services with regard to the scope of preemption. It is presumed that the parties are aware of the utility and limitations on the use of agency determinations of the construction of statutes. ""If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress .... [However,] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>National Ass'n of Home Builders v. Defenders of Wildlife</u>, — U.S. —, 127 S.Ct. 2518, 2534 (2007) (quoting <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)).

[15]  In light of the court's holding that it lacks jurisdiction over this action, the court need not delve so deeply into the preemptive effect of the statute as to render a decision on that issue. The state courts are competent to decide preemption issues. <u>Geddes</u>, at 1357.

16

procedures applicable to Part C of the Medicare Act satisfy the requirement that the Act must displace state law in favor of a strictly federal civil remedy.  Eleventh Circuit precedent is in direct opposition to this assertion.

In Geddes v. American Airlines, Inc., 321 F.3d 1349, 1354 (11th Cir. 2003), the Court reversed and remanded a district court decision finding that the Railway Labor Act completely preempted state court tort claims.  The Court acknowledged the preemptive reach of the statute. It recognized that the purpose of the RLA was "to provide for the prompt and orderly settlement of all disputes growing out of grievances or our of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Id. (quoting 45 U.S.C. §151a).  It noted also that "[t]he RLA permits narrow federal judicial review of adjustment board decisions, ... but the statute includes no language granting general jurisdiction over minor disputes to federal courts." Id. (citing 45 U.S.C. §153).  The provisions of Part C, giving the private insurer authority over the determination of grievances and allowing the CMS to contract its review of that determination to a private company, with a provision for limited federal review of the decision so reached, has even fewer of the earmarks of a federal civil remedy intended to replace pre-existing statutory or common law remedies.  The court also notes that, in the absence of a federal remedy, there is no federal jurisdictional grant in Part C of the Medicare Act that is at all similar to that found in the LMRA or ERISA.

The Geddes Court contrasted the exclusive federal jurisdiction over civil enforcement actions created by the LMRA and ERISA.  Id.; see Lontz v. Tharp, 413 F.3d 435, 442-44 (4th Cir. 2005)("the sine qua non of complete preemption is a pre-existing federal cause of action that can be brought in the district courts;" holding no complete preemption under sections 7 and 8 of

17

NLRA because no federal cause of action); <u>Strong v. Telectronics Pacing Systems, Inc.</u>, 78 F.3d

256, 260 (6th Cir. 1996)(congressional intent to confer jurisdiction over state claims is expressed

in creation of parallel federal cause of action); <u>Aaron v. National Union Fire Ins. Co. Of

Pittsburg</u>, 876 F.2d 1157, 1164-65 (5th Cir. 1989)(finding exclusive-remedy provision of

Longshore and Harborworkers Compensation Act was not example of complete preemption

because it did not create cause of action, but rather served to deny right of action to some

plaintiffs). Some of the pre-MMA cases addressing Medicare make this point, as well.  See <u>Nott

v. Aetna U.S. Healthcare, Inc.</u>, 303 F.Supp.2d 565 (E.D.Pa. 2004)(Medicare Act does not

preempt state law claims because (I) there is no civil enforcement scheme under Medicare to

replace the state law system and (ii) the Act does not clearly express Congressional intent to

preempt all state law claims).  While the MMA modified the preemption provision of §1395w-

26(b)(3), it does not appear to have significantly altered the grievance provisions.

 The court thus finds that Part C of the Medicare Act, as amended by the MMA in 2003,

lacks sufficient indication that Congress intended not only to preempt state law within the

parameters of the federal statutory scheme, but also to turn state law claims in that area into

federal claims or to establish that federal courts had original and removal jurisdiction over such

state law claims.  In so doing, the court is aware that this ruling is at odds with Judge DuBose's

decision in <u>Dial v. HealthSpring of Alabama, Inc.</u>, 2007 WL 2317783 (S.D. Ala).  Nonetheless,

in light of the presumption against finding jurisdiction, <u>Univ. Of S. Ala. v. Am. Tobacco Co.</u>,

168 F.3d at 411, the court can not find the requisite evidence of congressional intent to add to the

court's limited jurisdictional grant.

<u>Conclusion</u>

The court finds that Part C of the Medicare Act does not completely preempt state law,

and that this court therefor lacks jurisdiction over this removed action. Accordingly, it is hereby

**ORDERED**

1) that plaintiffs' Motions to Remand are **GRANTED**;

2) that the above-styled actions are **REMANDED** to the Circuit Court of Perry County,

Alabama; and

3) that an award of fees is not appropriate.

      **DONE** and **ORDERED** this the 2nd day of October, 2007.

                  /s/ Callie V. S. Granade
                  CHIEF UNITED STATES DISTRICT JUDGE